FILED
02 JAN 29 AM 10: 29
N.D. OF ALABAMA

ENTERED
JAN 29 2002

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ALABAMA-TOMBIGBEE RIVERS COALITION**, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Civil Action No. CV-01-S-0194-S |
| **GALE NORTON**, Secretary of the United States Department of the Interior, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This is an action in which plaintiffs contend that defendants violated the Constitution, the Endangered Species Act of 1973, 16 U.S.C. § 1531 *et seq.*, and the Administrative Procedures Act, 5 U.S.C. § 533 *et seq.*, when listing the "Alabama Sturgeon" as an endangered species. Plaintiffs seek declaratory and injunctive relief pertaining to the so-called "Final Rule" of the Fish and Wildlife Service listing the Alabama Sturgeon as an endangered species. *See* 65 Fed. Reg. 26,438. Plaintiffs allege that the contested action

> arose from an unlawful process and is based on the Defendant's [sic] flawed theory that the Alabama sturgeon is a unique species, separate and distinct from the Mississippi shovelnose sturgeon. The Plaintiffs, supported by the best scientific and commercial data available (both taxonomic and genetic), have established that the Alabama sturgeon is nothing more than a separate population of the Mississippi shovelnose sturgeon. That is, the so-called endangered "Alabama sturgeon" and the Mississippi shovelnose sturgeon are genetically the same species.[1]

Due to the parties' inability to agree on the need for discovery when conducting their planning meeting in accordance with Federal Rule of Civil Procedure 26(f), the court ordered briefs addressing the specific issue of whether plaintiffs should be allowed discovery under the facts and

---

[1] Complaint ¶ 26, at 8.



procedural posture of this action. Upon consideration of the parties' submissions, the court denies plaintiffs' request for discovery. For the reasons set forth below, the parties shall be prohibited from engaging in discovery, and this court's review of plaintiffs' contentions shall be limited to the administrative record and undisputed facts set forth in the pleadings.

Plaintiffs are the Alabama-Tombigbee Rivers Coalition, Parker Towing Company, Inc., and Charles A. Haun. The Alabama-Tombigbee Rivers Coalition alleges that it is a nonprofit corporation consisting of sixteen industries, agencies, and associations which have direct and substantial interests in the listing of the Alabama sturgeon as an endangered species; that is,

> one or more of them (i) own and operate dams on Alabama rivers and rely on and require, in conjunction with such ownership and operations, the ability to regulate the stream flow of those rivers; (ii) navigate the Alabama waterways, as part of their business operations, and rely on and require the continuing ability of the United States [Army] Corps of Engineers to dredge and maintain navigable channels in such rivers; (iii) discharge effluent to Alabama rivers and, therefore, rely on and require the continuing ability of the Environmental Protection Agency and the Alabama Department of Environmental Management to continue to issue discharge permits; and (iv) withdraw water from Alabama rivers as an integral component of their industries and rely on and require the continuing ability to do so.[2]

Parker Towing Company, Inc., alleges that it possesses "direct and substantial interest in the listing of the Alabama sturgeon because, among other reasons, such a listing will deprive it of the continuing ability to navigate the Alabama waterways, thus harming its business operations."[3] Plaintiff Charles A. Haun is the Vice President of Parker Towing Company, and alleges that he "has direct and substantial interests in the listing of the Alabama sturgeon because, among other reasons, such a listing will deprive him of both business and recreational use of Alabama waterways."[4]

---

[2] *Id.* ¶ 5, at 3.

[3] *Id.* ¶ 6, at 3-4.

[4] *Id.* ¶ 7, at 4.

Defendants are Gale Norton, Secretary of the United States Department of the Interior, Marshall Jones, Acting Director of the United States Fish and Wildlife Service ("FWS"),[5] and Sam Hamilton, Regional Director of FWS. All defendants are sued in their official capacities only.[6]

Plaintiffs allege numerous claims arising from the classification of the Alabama sturgeon as "endangered" pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. § 1533 *et seq*. Their claims may be summarized as follows:

> Count 1:   Defendants' failed to concurrently designate a "critical habitat" in violation of 16 U.S.C. § 1533(a)(3)(A), which constitutes arbitrary and capricious agency action within the meaning of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706.
>
> Count 2:   Defendants failed to publish the contested Final Rule within the time limits established by 16 U.S.C. § 1533(b)(6)(A), which constitutes arbitrary and capricious agency action within the meaning of the APA.
>
> Count 3:   Defendants failed to justify the Alabama sturgeon listing based solely on one or more of the five current threats to a specie listed in 16 U.S.C. § 1533(a)(1)(A)–(E), which constitutes arbitrary and capricious agency action within the meaning of the APA.
>
> Count 4:   Defendants failed to use the best scientific and commercial data available when listing the Alabama sturgeon as endangered, in violation of 16 U.S.C. § 1533(b)(1)(A), which constitutes arbitrary and capricious agency action within the meaning of the APA.
>
> Count 5:   Plaintiffs ask the court to declare that defendants acted arbitrarily, capriciously, not in accordance with law, and in excess of their authority in violation of the APA.
>
> Count 6:   Plaintiffs ask the court to declare that defendants deprived plaintiffs' of property rights arising out of their use of Alabama waterways in violation of the due process clause of the Fifth Amendment to the United States Constitution by —

---

[5]When this action was filed, Bruce Babbitt was Secretary of the Department of Interior and Jamie Rappaport Clark was Director of the Fish and Wildlife Service. The persons named in text were substituted as defendants pursuant to Federal Rule of Civil Procedure 25(d).

[6]*See* Complaint ¶¶ 8-10.

   A. failing to provide plaintiffs with a fair and impartial public comment and hearing process, and

   B. unlawfully interfering with the rule-making process.

Count 7: Section 4(a) of the ESA, 16 U.S.C. § 1533(a), is unconstitutional as applied to the listing of the Alabama sturgeon, because Congress exceeded its powers under the Commerce Clause by regulating an *intra*state species in which there is no commercial trade.

Count 8: Defendants exceeded their authority by rejecting the so-called "2000 Conservation Strategy" developed by the Alabama-Tombigbee Rivers Coalition, FWS, the U.S. Army Corps of Engineers, and the Alabama and Mississippi congressional delegations,[7] in favor of listing the Alabama sturgeon as an endangered species, which constitutes arbitrary and capricious agency action within the meaning of the APA.

Count 9: Plaintiffs request a permanent injunction preventing defendants from enforcing the Final Rule, listing the Alabama sturgeon as an endangered species, and invading a matter within the exclusive province of the State of Alabama.

Plaintiffs contend they are entitled to conduct discovery in this case for two reasons: (1) such discovery, and subsequent supplementation of the administrative record, is allowable due to a "strong factual basis which establishes bad faith, improper behavior, and agency misconduct";[8] and (2) additional discovery is allowable as to plaintiffs' "separate and independent" Constitutional claims.[9]

## A. Additional Discovery on Claims for APA Judicial Review

As a general rule, a district court reviewing an agency's decision pursuant to the APA is limited to the administrative record before that agency at the time of its decision, and parties seeking

---

[7]*See* Complaint ¶ 20, at 7 ("On February 9, 2000, the Coalition, the United States Army Corps of Engineers, the State of Alabama, and FWS entered into a conservation agreement and developed a strategy for protecting the Alabama sturgeon, collectively titled 'Conservation Agreement and Strategy for the Alabama Sturgeon' ('2000 Conservation Strategy').").

[8]Doc. 27, at 3.

[9]Doc. 17, at 11.

to reverse an agency decision are not commonly allowed to supplement the administrative record through discovery. *See, e.g., Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44, 105 S. Ct. 1598, 1606-07, 84 L. Ed. 2d 643 (1985); *Camp v. Pitts*, 411 U.S. 138, 142-43, 93 S. Ct. 1241, 1244, 36 L. Ed. 2d 106 (1973); *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242, 1246 (11th Cir. 1996) ("*PEACH*"). Further, the court, in its discretion, may enter a protective order prohibiting discovery and limiting its review to the administrative record. *PEACH*, 87 F.3d at 1245.

There are exceptions to the general rule. *See PEACH*, 87 F.3d at 1246-47 & n. 1 (citing *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436-37 (9th Cir.1988)). Such exceptions are "narrowly construed," however, and the party seeking discovery has "a heavy burden to show that supplementation is necessary." *United States v. Amtreco, Inc.*, 806 F. Supp. 1004, 1006 (M.D. Ga. 1992) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415, 91 S. Ct. 814, 823, 28 L. Ed.2d 136 (1971)).

Plaintiffs seek discovery and supplementation of the administrative record based on the alleged bad faith or improper conduct of defendants.

> The court may require the administrative officials who participated in the decision to give testimony explaining their action. Of course, such inquiry into the mental processes of administrative decisionmakers is usually to be avoided. And where there are administrative findings that were made at the same time as the decision, . . . there must be a *strong* showing of bad faith or improper behavior before such inquiry may be made. ...

*Overton Park*, 401 U.S. at 420, 91 S. Ct. at 825 (emphasis supplied) (citing *United States v. Morgan*, 313 U.S. 409, 422, 61 S. Ct. 999, 1004-05, 85 L. Ed. 1429 (1941)).

In support of this argument, plaintiffs have appended to their briefs numerous e-mail

transmission, letters, newspaper articles, and the affidavit of a lobbyist for the Alabama-Tombigbee Rivers Coalition, Richard P. Heartsill.[10] Doc. 17, Exs. A to Q; Doc. 27, Exs. 1-9. Plaintiffs contend that such documents demonstrate that defendants "ignor[ed] and, in fact, thwart[ed] use of the best scientific data available by wrongfully engaging in a conspiracy to suppress and influence genetic evidence supporting the conclusion that the Alabama sturgeon and the Mississippi shovelnose sturgeon are one and the same species." Doc. 17, at 6-7. Specifically, plaintiffs assert that defendants wrongfully and in bad faith contacted Dr. Steven Fain, a FWS genetic scientist, and that they influenced and directed his findings. *Id.* at 8. Plaintiffs argue that they need discovery in this court in order to determine the extent of defendants' efforts to influence Dr. Fain's research, and what Dr. Fain would have reported if defendants had not wrongfully influenced him.

The court has carefully reviewed plaintiffs' "evidence" and finds that it falls woefully short of showing at all — much less "strongly" showing — that defendants acted in bad faith or engaged in improper behavior.

The e-mails show that FWS had two concerns: (1) that Dr. Fain was performing scientific research for a party with a partisan interest in the final ruling — the Alabama-Tombigbee Rivers

---

[10]Mr. Heartsill describes himself and his relationship to the Coalition as follows:

> I am presently employed as President of Direct Communications, a public relations, issue management, and strategic counseling firm . . . . My duties at [Direct Communications] include coordinating the firm's media relations and issue management programs and acting as a liaison between our clients and [Direct Communications] staff. [Direct Communications] was retained by the Alabama-Tombigbee Rivers Coalition to provide assistance related to the federal government's proposal to list the Alabama sturgeon as an endangered species pursuant to the Endangered Species Act.

Doc. 17, Ex. Q.

Coalition — without knowledge that his work for such purpose;[11] and (2) that Dr. Fain, a geneticist whose work included testing caviar, did not have all the information, taxonomic and genetic, to properly render an opinion as to whether the Alabama sturgeon was a distinct species.[12] These issues were apparently resolved, and Dr. Fain submitted a report during the public comment period. His report is discussed in the Final Ruling. *See* 65 Fed. Reg. No. 88, at 26451-52.

Likewise, newspaper articles, letters, and the July 12, 1999 Heartsill affidavit do not constitute a "strong" showing of bad faith or improper conduct on the part of defendants sufficient to allow discovery and supplementation of the administrative record.

The newspaper articles are nothing more than position statements by the Alabama-Tombigbee Rivers Coalition and FWS's responses to such statements, with a smattering of information — such as hearing dates and attendance — thrown in for good measure. The letters, two from the Alabama-Tombigbee Rivers Coalition's counsel and one from FWS to United States

---

[11]The APA prohibits *ex parte* communications between an agency employee who "is or may reasonably be expected to be involved in the decisional process" and any "interested person outside the agency." 5 U.S.C. § 557; *see also Portland Audubon Soc. v. Endangered Species Committee*, 984 F.2d 1534, 1539-40 (9th Cir.) (holding that § 557 applies to the ESA), *order issued*, 988 F.2d 121 (9th Cir. 1993). The court does not find it unreasonable that FWS was concerned that one of its scientists may have been working for an interested party.

[12]One of the e-mails, the last in the series submitted by plaintiffs, states:

> I [Paul Hartfield, a FWS biologist and the author of the listing,] managed to get a hold of [sic] Steve Fain this afternoon. He insisted that he had no contact with the Rivers Coalition regarding sturgeon. However, he was surprised to hear that Mike Howell [a professor at Samford University] was employed by the Coalition. He had been "collaborating" with Mike in sturgeon studies. Although no report has been issued, he has "shared" some of his results with Mike. He expressed hope that Howell wasn't "using" him. We had a very good discussion about taxonomy and cytochrome b. He was unaware of some of the existing studies, or Mayden and Kuhajda's taxonomic study. I have copied him all reports in my possession. I believe he understands our problem and concern of misinterpretation. He has said he will let me know if he is contacted by the Coalition or its reps. I will let him know if his data pops up inappropriately.

Doc. 17, Ex. L. Correspondence from Howell to Fain does not indicate that Howell was working for the Coalition, but it does indicate that Howell was seeking DNA data for a FWS public hearing on the Alabama sturgeon. Plaintiffs' Reply Brief, Exs. 3 & 6.

Senator Richard Shelby, are similarly devoid of any showing of "bad faith or improper conduct."

Further, the affidavit of Richard Heartsill regarding his conversation with FWS biologist Paul Hartfield is not "strong" evidence of bad faith or improper conduct. The conversation described in Heartsill's affidavit took place *after* a public hearing in June 1999. According to Heartsill, he asked Hartfield — who had authored the proposed rule listing the Alabama sturgeon as endangered during March 1999 — "if there was anything that *could have been said* during the hearing by anyone testifying [that] would have changed his mind about the listing." Doc. 17, Ex. Q. ¶ 9 (emphasis supplied). According to Heartsill, Hartfield responded that "nothing *could have been said* at the public hearing that would have changed his mind about the validity of the listing." *Id.* ¶ 10 (emphasis supplied). This hardly constitutes "clear and convincing evidence" that Hartfield improperly predetermined that the Alabama sturgeon would be listed. At best, the evidence indicates that Heartsill asked Hartfield, hypothetically, whether he could think of any additional evidence that might have been, but was not, presented during the lengthy hearing that may have caused Hartfield to change his mind about listing the Alabama sturgeon as an endangered species; and, in response, Hartfield answered there was not. Heartsill's hypothetical question, asked immediately after hours of hearing testimony, about the existence of unoffered testimony that possibly could have changed Hartfield's mind is not "strong" evidence that Hartfield acted improperly or in bad faith.[13]

Therefore, the court finds that plaintiffs have not offered strong evidence of any bad faith or improper conduct by defendants in the listing of the Alabama sturgeon; accordingly, plaintiffs' request for discovery as to all issues to be reviewed pursuant to the APA is due to be denied.

---

[13] It is unclear from plaintiffs' complaint and briefs exactly what role — beyond authoring the proposed rule — Hartfield played in FWS's decision to issue the Final Rule and, therefore, how his alleged prejudgment of the merits of the listing violates plaintiffs' rights.

**B.     Additional Discovery on Plaintiffs' Constitutional Claims**

Plaintiffs assert two constitutional claims: (1) defendants violated the due process rights and private property protections afforded plaintiffs by the Fifth Amendment to the United States Constitution; and (2) the Endangered Species Act is unconstitutional as applied to the Alabama sturgeon.

**1.     Due process claims**

Plaintiff contend that "FWS failed to provide a fair and impartial public comment and hearing process." These contentions echo plaintiffs' APA claims. Doc. 17, p. 12. The only caselaw cited by plaintiffs in support of their request for discovery is *Webster v. Doe*, 486 U.S. 592, 603-05, 108 S.Ct. 2047, 2053-54, 100 L.Ed.2d 632 (1988), and *Kartsea v. Department of State*, 37 F.3d 1524 (D.C. Cir. 1994).

The *Webster* decision is distinguishable from the present case, because it involved an apparent conflict between § 102(c) of the National Security Act of 1947, 50 U.S.C. § 403(c) — which authorized the Director of the Central Intelligence Agency, "in his discretion," to terminate the employment of any CIA employee "whenever he shall deem such termination necessary or advisable in the interests of the United States" — and the Administrative Procedure Act, 5 U.S.C. § 701(a). The Supreme Court held that the language of the National Security Act only prohibited a terminated employee from "complain[ing] that his termination was not 'necessary or advisable in the interests of the United States,' since that assessment is the Director's alone." *Webster*, 486 U.S. at 603, 108 S. Ct. at 2054. The Court held that the Act did not "preclude consideration of colorable constitutional claims arising out of the actions of the Director" brought pursuant to the APA. *Id.* Nothing in the opinion supports plaintiffs' position that they should be allowed discovery of facts,

*identical* to those argued in support of their APA claims, simply because such facts are argued to support their separate theory of recovery, their procedural due process claims.

The other case cited by plaintiffs, *Kartseva v. Department of State*, also is distinguishable from this action. There, the plaintiff was fired from her job as a Russian translator working at a non-governmental entity known as "Statistica," a private employer doing government contract work, because the Department of State expressed "significant counterintelligence concerns" about plaintiff, and "declared her ineligible to work on the State [Department's] contract at Statistica." *Kartseva*, 37 F.3d at 1525. Plaintiff sued the State Department, seeking relief under regulations that established procedures for formal debarment and a denial of security clearance. However, neither of those actions was taken against the plaintiff in *Kartseva*; therefore, the plaintiff's APA claims were dismissed, and the District of Columbia Circuit held that the plaintiff could proceed on her Fifth Amendment due process claim.

An important distinction between the cases cited by plaintiffs and the present action is that the former concern actions directed at individuals, and not rule making of the agency affecting the public at large; further, in both cases, all or part of the allegations of wrongful conduct fell outside the ambit of the agency's statutes or regulations.

Plaintiffs' Fifth Amendment procedural due process claims (Count 6 of the complaint) are based on factual allegations identical to those asserted in support of their APA/ESA claims. Indeed, the court notes that caselaw suggests that plaintiffs do not have a right to some procedure beyond that provided by statute.[14] The Supreme Court has

---

[14]Listing a species on the endangered species list is accomplished by "rule-making" rather than by "adjudication." *See Hill v. Tennessee Valley Authority*, 549 F.2d 1064, 1074 (6th Cir. 1977), *aff'd*, 437 U.S. 153, 98 S. Ct. 2279, 57 L. Ed. 2d 117 (1978). Therefore, individualized due process is not required. *See Brown v. McGarr*, 774

>made it abundantly clear ... that when there is a contemporaneous explanation of the agency decision, the validity of that action must "stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review. If that finding is not sustainable on the administrative record made, then the Comptroller's decision must be vacated and the matter remanded to him for further consideration." The court should engage in this kind of review and not stray beyond the judicial province to explore the procedural format or to impose upon the agency its own notion of which procedures are 'best' or most likely to further some vague, undefined public good.

*Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 549, 98 S.Ct. 1197, 1214, 55 L.Ed.2d 460 (1978) (quoting *Camp v. Pitts*, 411 U.S. 138, 143, 93 S. Ct. 1241, 1244, 36 L. Ed. 2d 106 (1973)).

Therefore, the court finds that plaintiffs are not entitled to discovery on their due process claim, and that such claim is limited to the administrative record.

### 2. Unconstitutionality of the Endangered Species Act as applied

Plaintiffs also contend that the ESA is unconstitutional as applied to the facts of this case, because the Alabama sturgeon "is strictly an intrastate species," and, "[t]here is no commercial trade in the Alabama sturgeon." Doc. no. 1, ¶¶ 89-90. Defendants admit both allegations. *See* doc. no. 8, ¶¶ 89-90. Therefore, plaintiff allege that Congress exceeded its authority under the Commerce Clause. This claim, however, turns upon an application of law to only these undisputed material facts. Accordingly, no discovery is needed, and plaintiffs' request for additional discovery is due to be denied.

An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

---

F.2d 777, 784 (7th Cir. 1985).

DONE this 29th day of January, 2002.

_____
United States District Judge

DONE this **29th** day of January, 2002.

_____
United States District Judge