FILED

2005 Nov-14  PM 03:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **ALABAMA-TOMBIGBEE RIVERS COALITION, an Alabama nonprofit corporation,** *et al.*, | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **CIVIL ACTION NO. CV-01-0194-VEH** |
| **vs.** | ) ) ) | |
| **GALE NORTON, Secretary of the Department of the Interior,** *et al.*, | ) ) ) | |
| **Defendants.** | ) ) ) | |

## MEMORANDUM OPINION

This matter comes before the court on the cross-motions for summary judgment filed by the parties to this action (doc. 44, 49). The Complaint was filed on January 18, 2001 (doc. 1). The plaintiffs (hereafter "Coalition") filed this lawsuit under the citizen-suit provision of the Endangered Species Act (ESA), 16 U.S.C. § 1540(g)(1), and the judicial-review provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-06, contending that the final rule listing the Alabama Sturgeon as an endangered species: (1) arose from an unlawful process; (2) was based on the flawed conclusion that the Alabama Sturgeon is a separate species from the Mississippi

1

shovelnose sturgeon; (3) failed to designate critical habitat; (4) violated the Coalition members's Fifth Amendment right to Due Process; and (5) was not within the powers granted to Congress by the Constitution under the Commerce Clause.

The Coalition filed a motion for summary judgment on April 16, 2002 (doc. 44).  The defendants (hereafter "Government") filed a cross-motion for summary judgment on May 16, 2002 (doc. 49).

The district court denied the Coalition's motion for summary judgment and granted the Government's cross-motion for summary judgment holding that the Coalition lacked standing to bring this suit (doc. 58).  No other arguments were addressed in the court's memorandum opinion entered with the order on these motions.  The district court's decision was reversed and remanded on appeal (doc. 62) and the case was reassigned to the undersigned judge on June 28, 2004.  The parties subsequently submitted to the court updates on the law contained in the cross-motions for summary judgment (docs. 83, 84, 85, 86).  Oral arguments were heard by the court on September 21, 2005.

During oral arguments, the Coalition abandoned Count Two of the Complaint and consolidated Counts Three and Four.  In addition, the Coalition asserted that the court's ruling on Counts Three and Four were inextricably linked to the court's ruling as to Count Five, that Count Eight is abandoned as the Coalition concedes that the

2

FWS was within its authority under the ESA to list the Alabama Sturgeon as endangered, and that Count Nine is solely a remedy.  The court will rule on the remaining Counts: One, Three, Four, Five, Six, and Seven of the Coalition's Complaint.

### Plaintiffs' Claims

Count One:       The Fish and Wildlife Service (FWS) violated 16 U.S.C. § 1533(a)(3)(A) by failing to concurrently designate a critical habitat with its listing decision.

Count Three:     FWS violated 16 U.S.C. § 1533(a)(1) by failing to justify listing based solely on the five listing criteria provided in the ESA.

Count Four:      FWS violated 16 U.S.C. § 1533(b)(1)(A) by failing to rely on the best scientific and commercial data available in making their listing decision.

Count Five:      FWS violated the Administrative Procedure Act.

Count Six:       Violations of the United States Constitution (Fifth Amendment Due Process).

Count Seven:     Violations of the United States Constitution (Commerce Clause).

## **Facts**[1]

The Alabama Sturgeon (*Scaphirhynchus suttkusi* ) is a small freshwater fish that was historically found only in the Mobile River system of Alabama and Mississippi. *Final Rule to List the Alabama Sturgeon as Endangered*, 65 Fed.Reg. 26438 (May 5, 2000)(hereafter *"Final Rule"*). This sturgeon is an elongate, slender fish growing to about 80 centimeters (cm) (31 inches (in)) in length. A mature fish weighs 1 to 2 kilograms (kg) (2 to 4 pounds (lb)). The head is broad and flattened shovel-like at the snout. The mouth is tubular and protrusive. There are four barbels (whisker-like appendages used to find prey) on the bottom of the snout, in front of the mouth. Bony plates cover the head, back, and sides. The body narrows abruptly to the rear, forming a narrow stalk between the body and tail. The upper lobe of the tail fin is elongated and ends in a long filament. *Id.* Although the sturgeon was once so common that it was captured commercially, it is now very rare and thought to occur only in small portions of the Alabama River channel in south Alabama and downstream to the mouth of the Tombigbee River.[2] *Id.* at 26439-40. This decline has

---

[1]"This court's review of plaintiffs' contentions shall be limited to the administrative record and undisputed facts set forth in the pleadings" (Order Denying Plaintiffs' Request to Engage in Discovery (docs. 28-29); see also Order Amending the Administrative Record (doc. 38), Order Denying Plaintiffs' Motion and Renewed Motion for a Hearing on Discovery (doc. 78)).

[2]The last documented commercial harvest of Alabama Sturgeon occurred in 1898; however, the FWS believes that Alabama Sturgeon were caught for commercial purposes into the

been attributed to "over-fishing, loss and fragmentation of habitat due to historical navigation-related development, and water quality degradation." *Id.* at 26438.

The FWS initially considered whether to propose listing the sturgeon in 1980. *Review of Three Southeastern Fishes*, 45 Fed.Reg. 58171 (Sept. 2, 1980). The FWS issued a proposed rule to list the Alabama Sturgeon as endangered and to designate its critical habitat in 1993. *Proposed Endangered Status and Designation of Critical Habitat for the Alabama Sturgeon* (*Scaphirhynchus suttkusi*), 58 Fed.Reg. 33148 (June 15, 1993). During the public comment period on the proposed rule, businesses in Alabama became concerned about the economic impact of the listing and the Coalition formed to review the FWS's scientific and legal rationales for listing the Alabama Sturgeon. The Coalition sued the FWS under the Federal Advisory Committee Act (FACA), 5 U.S.C. App. 2, and obtained an injunction against the FWS to prevent the use of a report prepared by an improperly convened scientific committee. *Alabama-Tombigbee Rivers Coalition v. Dep't of Interior,* 26 F.3d 1103 (11th Cir.1994)(affirming the district court's entry of permanent injunction). The FWS withdrew the proposed rule in 1994 because there was "insufficient information to justify listing a species that may no longer exist." *Withdrawal of Proposed Rule for Endangered Status and Critical Habitat for the Alabama Sturgeon*, 59 Fed.Reg.

---

1960's. *Final Rule.*

64794 (December 15, 1994).

The capture of several Alabama Sturgeon confirmed the species's existence and the FWS issued a new proposed rule to list the fish as an endangered species in 1999.[3] *Proposed Rule to List the Alabama Sturgeon as Endangered*, 64 Fed. Reg. 14676 (March 26, 1999).  After several extensions of the public comment period, in which the Coalition took part, the FWS published a final rule listing the Alabama Sturgeon as an endangered species. *Final Rule,* 65 Fed. Reg. 26438 (May 5, 2000).  Following publication of the *Final Rule*, the Coalition filed suit against the Government.

## Standard of Review for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party has

---

[3]The last known Alabama Sturgeon died in captivity in 2003.

met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine

issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in

8

the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## Analysis

I.   **FWS did not violate the Commerce Clause in listing the Alabama Sturgeon as an endangered species pursuant to the ESA.**

The Coalition asserts that the regulation of an intrastate, noncommercial fish by the FWS under the ESA violates the Commerce Clause based on the precedent articulated in *United States v. Lopez,* 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000).[4]  The Coalition argues that the FWS's application of the ESA in listing the Alabama Sturgeon as endangered violates the Commerce Clause.  The Government's position is that the FWS was within the bounds of the Commerce Clause when it listed the Alabama Sturgeon as endangered in light of various Circuit Court decisions on point analyzed under the standards articulated in

---

[4]During oral arguments heard by the court on September 21, 2005, the Government and the Coalition agreed that the Alabama Sturgeon is an intrastate, noncommercial fish.

*Lopez* and *Morrison*.

In *United States v. Lopez,* 514 U.S. 549 (1995), the Supreme Court struck down a statute prohibiting the possession of a gun within 1,000 feet of a school as an invalid exercise of Congress' Commerce Power. *Id.* at 558. The Court reasoned that, despite the breadth of the Commerce Clause, there are "outer limits" to Congress's power. *Id.* at 557. Specifically, the Court held that Congress may only regulate activities which fall into one of the following three categories:

> 1.  the use of the channels of interstate commerce;
>
> 2.  instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; or
>
> 3.  activities having a substantial relation to interstate commerce.[5]

*Id.* at 558-559.

The *Lopez* Court noted that the regulated activity (the possession of firearms near schools) fell into none of the three categories. The Court rejected the

---

[5]The *Lopez* Court established a four-prong test for determining whether regulated activities have a "substantial relation" to interstate commerce: (1) the regulation concerns commerce or economic activity; (2) the regulation contains a jurisdictional element that ensures, through a case-by-case inquiry, that the regulated activity affects interstate commerce; (3) the legislative history contains Congressional findings regarding the effects upon interstate commerce; and (4) the proposed link between the [regulated] activity and its substantial impact is not overly attenuated. *United States v. Lopez,* 514 U.S. 549 (1995).

Government's argument that the act substantially relates to interstate commerce because, absent the law, the resulting higher crime rate near schools increases costs for the entire population, discourages interstate travel, obstructs the educational process, and accordingly obstructs productive citizenry. *Id*. at 563-564. Recognizing the far reaching implications of accepting such attenuated arguments, the Court stated:

> Under the theories that the Government presents in support of [the Act], it is difficult to perceive any limitation on federal power, even in areas such as criminal law enforcement or education where States historically have been sovereign. Thus, if we were to accept the Government's arguments, we are hard pressed to posit any activity by an individual that Congress is without power to regulate.

*Id.* at 564.

The Supreme Court also addressed the limits of Congress's Commerce Clause power in *United States v. Morrison*, 529 U.S. 598 (2000).  The Court struck down legislation which provided a federal civil remedy for the victims of gender-motivated violence.  Because the statute focused on gender-motivated violence "wherever it occurs," rather than violence directed at instrumentalities of interstate commerce, interstate markets, or things or persons in interstate commerce the Court restricted its analysis to whether or not the activity regulated had a substantial relationship to interstate commerce and found that it did not.  *Morrison*, 529 U.S. at 609.

11

As in *Lopez*, the Court in *Morrison* rejected the Government's argument that gender-motivated crime effects interstate commerce by deterring victims from traveling interstate, engaging in interstate business, transacting business, and ultimately diminishing national productivity. *Id.* at 613.   The Court held that accepting such arguments might allow Congress to "use the Commerce Clause to completely obliterate the Constitution's distinction between national and local authority" and, if accepted, "would allow Congress to regulate any crime as long as the nationwide, aggregated impact of that crime has substantial effects on employment, production, transit, or consumption." *Id.* at 615.

In the present case, the Government offers several persuasive cases in support of its position that the FWS's listing of the Alabama Sturgeon as endangered fits neatly within the Commerce Clause framework established in *Lopez* and *Morrison*. In *GDF Realty Investments, Ltd. v. Norton*, the United States Court of Appeals for the Fifth Circuit held that the application of the ESA's "take" provisions to six species of subterranean invertebrates (which are purely intrastate and decidedly non-commercial) was a valid exercise of the Commerce Clause. 326 F.3d 622, 640-41 (5th Cir. 2003), *reh'g denied*, 362 F.3d 286 (5th Cir. 2004).   The Fifth Circuit held that the ESA is "an economic regulatory scheme" because its drafters "were concerned by the 'incalculable' value of the genetic heritage that might be lost absent regulation" and

that the "regulation of intrastate takes of the [endangered] Cave Species is an essential part" of that regulatory scheme. *Id.* at 639-40.  As such, the court concluded that "take" of these endangered cave species "may be aggregated with all other ESA takes" and that, considering the interdependence of species, such takes "do affect interstate commerce." *Id.* at 640-41.  For the preceding reasons the Fifth Circuit held that "application of ESA's take provision to the [endangered] Cave Species is a constitutional exercise of the Commerce Clause power." *Id.*

The United States Court of Appeals for the District of Columbia Circuit reached the same conclusion in *Rancho Viejo, L.L.C. v. Norton*, 323 F.3d 1062 (D.C. Cir. 2003), finding that the application of the ESA to a purely intrastate and noncommercial species, the arroyo toad, was a valid exercise of the Commerce Clause.  Similarly, the United States District Court for the District of Wyoming recently held that it is "well-settled that the ESA is a Constitutional exercise of Congressional authority under the Commerce Clause" and that the argument that Congress "is powerless to regulate gray wolves via the ESA on private or State lands because such regulation violates the Commerce Clause is meritless."  *Wyoming v. United States Department of the Interior*, 360 F. Supp. 2d 1214, 1240, 1242 (D. Wyo. 2005).

It is worthy of note that both *Rancho Viejo* and *GDF Realty* were decided following the Supreme Court's decisions in *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000). While neither *Lopez* nor *Morrison* addressed the ESA specifically, the Coalition relied heavily on these holdings in its briefs. The Fifth Circuit and the D.C. Circuit applied the standards set out in *Lopez* and *Morrison* to the ESA however, and concluded that the ESA's regulation of an intrastate, non-commercial species is constitutional under the Commerce Clause. The Coalition does not cite to a case in which a court reviewed the validity of the ESA's application to an intrastate, noncommercial species under Commerce Clause precedent and held that the ESA's application was unconstitutional.

In addition, the Government argues that the Supreme Court's recent decision in *Gonzales v. Raich* (the "medical marijuana" case) also provides further support for the conclusion that a valid exercise of the Commerce Clause can reach even purely intrastate, non-commercial activity.[6] *Gonzales v. Raich,* 125 S. Ct. 2195 (2005). In *Gonzales*, the Supreme Court upheld a federal statute that prohibited the purely

---

[6]The Supreme Court recently vacated *United States v. Maxwell*, 386 F.3d 1042 (11th Cir. 2004), and *United States v. Smith*, 402 F.3d 1303 (11th Cir. 2005), for "further consideration in light of *Gonzales v. Raich*, 125 U.S. 2938 2005)." The Coalition partly relied on these cases in support of its contention that the 11th Circuit would most likely hold the application of the ESA to the Alabama Sturgeon to be impermissible under the Commerce Clause authority articulated in *Lopez* and *Morrison*. Neither *Maxwell* nor *Smith* dealt with the ESA.

intrastate and non-commercial cultivation, possession, and use of "medical" marijuana. *Id.* at 2215. The Court held that Congress possessed the authority to bar these activities despite the fact that they were solely intrastate and non-commercial because such a prohibition was necessary to support a broader regulatory scheme intended to end interstate commerce in illegal drugs. *Id.* at 2208; *Id*. at 2216 ("Where necessary to make a regulation of interstate commerce effective, Congress may regulate even those intrastate activities that do not themselves substantially affect interstate commerce.")(Scalia, J., concurring).

Moreover, the Court stressed that "[i]n assessing the scope of Congress's authority under the Commerce Clause, . . . the task before us is a modest one." *Id.* at 2208. The Court held that it was not required to determine whether the activities at issue, taken in the aggregate, would "substantially affect interstate commerce in fact," but rather "only whether a 'rational basis' exists for so concluding." *Id.* (emphasis added).

While the Supreme Court did not address the ESA specifically in *Gonzales*, it cited the similar "take" provision of the Bald and Golden Eagle Protection Act, 16 U.S.C. § 668(a), as an example of a "rational (and commonly utilized) means of regulating commerce." *Id.* at 2211 n.36.

The Supreme Court denied *certiorari* in every case in which a court held that a challenge of the ESA's application to an intrastate, noncommercial species under the Commerce Clause was without merit.  See *GDF Realty Investments, Limited v. Norton*, 326 F.3d 622, 640-41 (5th Cir. 2003), *cert. denied*, 125 S. Ct. 2898 (2005); *Rancho Viejo L.L.C. v. Norton*, 323 F.3d 1062 (D.C. Cir. 2003), *cert. denied*, 124 S. Ct. 1506 (2004); *Gibbs v. Babbitt*, 214 F.3d 483 (4th Cir. 2000), *cert. denied*, 531 U.S. 1145 (2001)(holding that the FWS's application of the ESA was within the bounds of the Commerce Clause as applied to the purely intrastate, noncommercial red wolf living on privately owned property in North Carolina); *National Ass'n of Home Builders v. Babbitt*, 130 F.3d 1041 (D.C. Cir. 1997), *cert. denied*, 524 U.S. 937 (1998)(holding that the FWS's application of the ESA was within the bounds of the Commerce Clause as applied to two purely intrastate, noncommercial species of fly living on private property in California; noting also that over half of the species recognized by FWS as endangered or threatened were purely intrastate species).

In consideration of the evidence and undisputed facts in the present case in light of *Lopez*, *Morrison*, *Gonzales*, and the Circuit Court decisions discussed herein, the court concludes that the FWS acted within the scope of the Commerce Clause in listing the Alabama Sturgeon as an endangered species pursuant to 16 U.S.C. § 1533. The listing of a purely intrastate, noncommercial species under the ESA does not

violate the Commerce Clause because "the 'incalculable' value of the genetic heritage that might be lost absent regulation" would undoubtedly harm interstate commerce in a permanent and irreparable way. *GDF Realty Investments, Ltd. v. Norton*, 326 F.3d 622, 640-41 (5th Cir. 2003), *reh'g denied*, 362 F.3d 286 (5th Cir. 2004). Congress is within its authority to impose regulations to prevent such harm.

## II.     The Coalition was afforded adequate Due Process by the FWS during the listing period for the Alabama Sturgeon.

The Coalition asserts that the Government failed to conduct a fair, objective, and impartial public comment period and hearing during the listing process of the Alabama Sturgeon and that the Government's attempts to influence an expert, Dr. Fain, who presented a report considered by the FWS during the listing period, violated the Coalition's Due Process rights under the Fifth Amendment of the U.S. Constitution.[7]

## A.     The public comment periods and hearings conducted during the listing process for the Alabama Sturgeon did not deprive the Coalition of its Due Process rights under the Fifth Amendment.

---

[7]The Coalition asserts a Fifth Amendment take of its property rights in the Alabama and Tombigbee Rivers due to the listing of the Alabama Sturgeon.  The court does not inquire into whether or not the Coalition does, in fact, possess a property right in the public waterways of Alabama.  Solely for purposes of the Coalition's Fifth Amendment Due Process argument, the court's analysis is based on the assumption that some property right of the Coalition has been disturbed due to the listing of the Alabama Sturgeon.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  In the present case, the evidence establishes that the general public was afforded the opportunity to be heard at every stage of the decision-making process.  During the time between the publication of the *Proposed Rule* on March 26, 1999 (64 Fed. Reg. 14676, AR 57) and the issuance of the *Final Rule* on May 5, 2000 (65 Fed. Reg. 26438, AR 1), no fewer than four separate comment periods were opened to encourage public comment and participation.  Those periods ranged: from March 26, 1999, to July 5, 1999 (AR 45, 57); from July 12, 1999, to September 10, 1999 (AR 35); from February 7, 2000, to March 8, 2000 (to receive comments on the Fain(2000) report)(AR 29); and from February 16, 2000 to March 17, 2000 (to receive comments on the Conservation Agreement and Strategy for the Alabama Sturgeon signed on February 9, 2000)(AR 27).  Moreover, at the request of the Coalition, a public hearing on the proposal was held at the Montgomery Civic Center on June 24, 1999 (AR 37, 48).   The Administrative Record details that the FWS went to great lengths to notify the public, to include the Coalition in the listing process, and to seek comments on the listing action.  As a result, the FWS received approximately 4,000 written comments and

18

held a public hearing that was attended by approximately 1,000 people (AR 1 at 26442; see also AR 312-643).

The Coalition actively participated in the listing process through oral comments (AR 37) and written submissions (AR 314, 350, 352, 374, 410, 502, 638, 639, 640, 641, 642, and 643).

The FWS has the authority to list species, such as the Alabama Sturgeon, as endangered pursuant to the authority and guidelines of the ESA.  Based on the information available in the Administrative Record and the undisputed facts set forth in the parties' pleadings, the court concludes that the FWS held meaningful public comment forums during the listing period for the Alabama Sturgeon and that the FWS reviewed and considered the comments received.  The Coalition's participation in this process is documented by the FWS in the *Final Rule*.  The Coalition actively participated in the listing process and that process afforded the Coalition a meaningful opportunity to be heard.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)(citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  If a property right of the Coalition was taken as a result of the listing decision, it was not done absent adequate and meaningful Due Process.

**B.**     **Nothing in the Administrative Record or in the undisputed facts presented in the pleadings suggests that the FWS interfered with Dr. Fain's research.**

The Coalition argues that its Due Process rights were violated because the FWS improperly interfered with or improperly influenced the expert report(s) submitted by Dr. Fain during the listing process of the Alabama Sturgeon; however, the Coalition does not cite to any admissible evidence to substantiate this claim.[8]  The Coalition moved first for summary judgment on this issue.  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   The Government combats this lack of evidence by presenting evidence contrary to the Coalition's position.   The FWS specifically addresses this accusation and denies the Coalition's allegation in detail in the text of the *Final Rule* .  65 Fed. Reg. 26438, AR 29.  The Fain (2000) report was considered and weighed by the FWS during the listing process and was discussed at length in the *Final Rule.  Id.*  The Coalition does not meet its evidentiary burden on this issue for summary judgment and cannot prevail.

_____

[8]The Coalition cites to documents (mostly in the form of newspaper articles and e-mails) in support of its contention that the FWS improperly interfered with Dr. Fain's research.  These documents have been excluded from evidence by the court and are not considered for the purpose of the court's analysis of the pending cross-motions for summary judgment (See docs. 28, 29, 38, 78).

**III.** **The Coalition's claims under the Administrative Procedure Act (APA) requesting that the court substitute its judgment for the judgment of the FWS fail as a matter of law.**

**A.** **The FWS did not violate the APA, when listing the Alabama Sturgeon as endangered.**

Judicial review of administrative actions under the ESA, including the decision currently at issue, is governed by section 706 of the APA, 5 U.S.C. § 706. *Pyramid Lake Paiute Tribe v. U.S. Dept. of the Navy*, 898 F.2d 1410, 1413 (9th Cir. 1990). Under the APA an agency determination may be set aside only if it is arbitrary, capricious, an abuse of discretion, or contrary to law. 5 U.S.C. § 706(2)(A). This standard is a narrow one whereby "[t]he court is not empowered to substitute its judgment for that of the agency." *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242, 1246 (11th Cir. 1996) citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)(See also *American Petroleum Institute v. EPA*, 858 F.2d 261, 264 (5th Cir. 1988) citing *Baltimore Gas and Elec. Co. v. Natural Res. Defense Council, Inc.*, 462 U.S. 87 (1983)). The court should not examine the evidence and determine whether it would have decided an issue differently; instead, it "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538-40 (11th Cir.

1990); see also *Baltimore Gas & Electric Co. v. Natural Resources Defense Council*, 462 U.S. 87, 105 (1983); *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 377 (1989). "The relevant inquiry is whether the agency considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Pyramid Lake Paiute Tribe*, 898 F.2d 1410, 1414 (internal citations omitted); see also *United States v. Guthrie*, 50 F.3d 936, 946 (11th Cir. 1995) ("This circuit is 'highly deferential' to an agency's consideration of the factors relevant to its decision.") (citing *Hussion v. Madigan*, 950 F.2d 1546, 1553 (11th Cir. 1992)).

This deferential standard of review "is especially appropriate where, as here, the challenged decision implicates substantial agency expertise." *Mt. Graham Red Squirrel v. Espy*, 986 F.2d 1568, 1571 (9th Cir. 1993) (citations omitted). The court is to "defer to the agency's interpretation of equivocal evidence, so long as it is reasonable." *Central Arizona Water Conservation Dist. v. U.S. Environmental Protection Agency*, 990 F.2d 1531, 1539 (9th Cir. 1993). Deference to the agency is "greatest when reviewing technical matters within its area of expertise, particularly its choice of scientific data and statistical methodology." *State of Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 329 (5th Cir. 1988).

Moreover, often "the available data do not settle a regulatory issue, and the agency must then exercise its judgment in moving from the facts and probabilities on

the record to a policy conclusion." *Fisherman's Dock Coop. v. Brown*, 75 F.3d 164,

172 (4th Cir. 1996) (citing *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins.

Co.*, 463 U.S. 29, 52 (1983)).  In these situations, the agency must be free to make the

"decision without pretending that that decision reflected some degree of rational

perfection beyond what the inherent uncertainties of the available data permitted." *Id.*

Accordingly, "[w]hen specialists express conflicting views, an agency must have

discretion to rely on the reasonable opinions of its own qualified experts even if, as an

original matter, a court might find contrary views more persuasive." *Marsh*, 490 U.S.

at 378.

When a question of statutory construction is raised courts must show deference

to the interpretation given by the agency in the exercise of its delegated authority.

*United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 2171-2172 (2001); *EPA*

*v. National Crushed Stone Ass'n*, 449 U.S. 64, 83 (1980); *American Wildlands v.*

*Browner*, 260 F.3d 1192, 1196 (10th Cir. 2001) (applying *Chevron* deference to EPA

decisions to approve state water quality standards).  Even if a statute is susceptible to

more than one interpretation, a court must accept the interpretation chosen by the

agency if it is "reasonable." *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 844 (1984).

An agency's interpretation of its own regulations is entitled to even greater deference.

*Auer v. Robbins*, 519 U.S. 452, 461 (1997).  Courts give "controlling weight" to the

agency's interpretation "unless that interpretation is plainly erroneous or inconsistent with the regulation." *Praxair, Inc. v. Fla. Power & Light Co.*, 64 F.3d 609, 613 (11th Cir. 1995); *Fla. Gas Transmission Co. v. FERC*, 741 F.2d 1307, 1309 (11th Cir. 1984).

Finally, judicial review of an agency's determination must be based on the administrative record that was before the agency at the time the decision was made. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); *United States v. Guthrie*, 50 F.3d 936, 944 (11th Cir. 1995).  Accordingly, the scope of review in this matter requires this court to focus on the contents of the administrative record to determine if that record supports the decision.  Absent narrowly-defined exceptional circumstances, extra-record materials that were not before the agency may not be used to supplement the administrative record.  *Preserve Endangered Areas of Cobb's History, Inc. ("P.E.A.C.H.") v. United States Army Corps of Eng'rs.*, 87 F.3d 1242, 1246 (11th Cir. 1996).  In the present case, the court ruled that the evidence to be considered will come solely from the administrative record as amended by the court and the undisputed facts as set forth in the pleadings (See docs. 28, 29, 38, 78).  The court did not permit additional discovery in this case (doc. 29).

As such, the court holds that there is nothing in either the Administrative Record or in the parties' undisputed facts that demonstrates that the FWS listing

24

decision process or the listing decision itself is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The remainder of the Coalition's claims will be analyzed according to this holding.

> **B.    The FWS was within its authority to base its listing of the Alabama Sturgeon on two of the mandatory five listing criteria found in 16 U.S.C. § 1533(a)(1).**

"The Secretary shall by regulation promulgated ... determine whether any species is an endangered species or a threatened species because of <u>any</u> of the following factors:

> (A) the present or threatened destruction, modification, or curtailment of its habitat or range;
> (B) overutilization for commercial, recreational, scientific, or educational purposes;
> (C) disease or predation;
> (D) the inadequacy of existing regulatory mechanisms; or
> (E) other natural or manmade factors affecting its continued existence."

16 U.S.C.A. § 1533(a)(1)(emphasis added).

The FWS listed the Alabama Sturgeon as endangered based on subsections (A) and (E) above. *Final Rule.* The Coalition argues that the FWS's listing on these two criteria alone fails because the threats to the Alabama Sturgeon are not current threats based on the information found within the Administrative Record. This contention fails on two fronts. First, the court will not substitute its judgment for that of the FWS based on the evidence currently before the court because the FWS's judgment was not

arbitrary, capricious, or an abuse of discretion.  *Hussion v. Madigan*, 950 F.2d 1546, 1553 (11th Cir. 1992).  Second, the court should grant great deference to an agency's reasonable determination of a statute.  *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 844 (1984).

In the present case, the FWS determined that 16 U.S.C. § 1533(a)(1) afforded it the choice to list the Alabama Sturgeon as endangered under two of the five possible listing criteria.  This is a reasonable reading of 16 U.S.C. § 1533(a)(1).  The Coalition does not put forth any case law or alternate theory of statutory interpretation that contradicts the reasonableness of the FWS's determination.  Consequently, the court will not disturb the FWS's reasonable interpretation of 16 U.S.C. § 1533(a)(1).

**C.**   **The court will not inquire into the nature and quality of the scientific and commercial data used by the FSA during the listing process for the Alabama Sturgeon.**

The Coalition asserts that the FWS violated 16 U.S.C. § 1533(b)(1)(A) by failing to rely on the best scientific and commercial data available in listing the Alabama Sturgeon as endangered.  Analysis of this claim is governed by the APA and *U.S. v. Guthrie*, 50 F.3d 936 (11th Cir. 1995).  Deference to the agency is "greatest when reviewing technical matters within its area of expertise, particularly its choice of scientific data and statistical methodology."  *State of Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 329 (5th Cir. 1988).  It is not for this court to decide whether or

26

not the FWS used the best scientific and commercial data available in reaching its listing decision; rather the court must consider whether or not the FWS reviewed the data before it in a way that is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *U.S. v. Guthrie*, 50 F.3d 936, 945 (11th Cir. 1995)(citing 5 U.S.C.A. § 706(2)(A)). The arbitrary and capricious standard articulated in *Guthrie* applies to the FWS's determination that the Alabama Sturgeon is considered to be a valid and separate species. *Id.*

Upon review of the sources and studies cited in the *Final Rule*, the court concludes that the FWS did not act outside of the scope of *Guthrie* when determining that the Alabama Sturgeon is indeed a valid and separate species from the Mississippi Shovelnose Sturgeon.

In the *Final Rule*, the FWS acknowledges that "there is some disagreement concerning the [Alabama] sturgeon's taxonomic status." 65 FR 26438, 26439 (2000). Despite this "disagreement" the FWS supports its finding in that the Alabama Sturgeon is recognized "as a species by several recent unpublished studies (Campton et al. 1995, 1999, in press; Genetic Analyses, Inc. 1994, 1995; Mayden et al. 1999) ... [and] is nationally and internationally recognized as a valid species." *Id.* The FWS cites to nine published studies that recognize the Alabama Sturgeon as a separate and valid species. *Id.* at 26443. Several of these published studies discuss the differences

27

between the Alabama Sturgeon and the Mississippi Shovelnose Sturgeon.  These references reflect the scientific history behind the FWS's conclusion that the Alabama Sturgeon is a separate and valid species.  Based on the court's review of the record, the FWS did not act arbitrarily or capriciously in determining that the Alabama Sturgeon is a separate and valid species for purposes of listing it as an endangered species pursuant to 16 U.S.C. § 1533.

**IV.   FWS violated 16 U.S.C. § 1533(a)(3)(A) by failing to concurrently designate "critical habitat" with its listing decision.**

During oral arguments heard by the court on September 21, 2005, the Government conceded that it was in violation of 16 U.S.C. § 1533(a)(3)(A) due to its failure to designate a critical habitat for the Alabama Sturgeon contemporaneously with its listing decision or within the maximum two year extension limitation allowed by the statute.  Designation of a critical habitat by the FWS is a "mandatory, non-discretionary duty unambiguously imposed by the ESA" and "the Administrative Procedure Act requires courts to compel agency action unlawfully withheld."[9] *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1181 (10th Cir. 1999)(See also *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997)("The reviewing court

---

[9]In *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1180 (10th Cir. 1999) the Court of Appeals for the 10th Circuit directed a district court to order the FWS to designate a critical habitat for the endangered Rio Grande silvery minnow "as soon as possible" due to the FWS's violation of 16 U.S.C. § 1533.

shall ... compel agency action unlawfully withheld or unreasonably delayed"). Thus, the court is compelled to remedy the FWS's failure to comply with 16 U.S.C. § 1533(a)(3)(A).

The Coalition proposes that the court should impose the extraordinary and unprecedented remedy of vacating the listing decision in its entirety thus causing the FWS to begin the listing process of the Alabama Sturgeon anew. The Coalition cannot cite to an instance where a court has ordered this remedy nor is the court convinced that this course of action would correct the FWS's failure to comply with the ESA in the most prudent, just, and equitable way. The Coalition's proposed remedy would require great a expense of money, time, and resources should the FWS decide to re-list the Alabama Sturgeon.

The court is not persuaded that the Coalition's proposed remedy is appropriate and finds support for a less drastic and less costly remedy that would bring the FWS into compliance with the ESA. In *Kern County Farm Bureau, et al. v. Anne Badgley, et al.*, the FWS violated 16 U.S.C. § 1533(a)(3)(A) by failing to concurrently designate a critical habitat with its listing decision for the Buena Vista Lake Shrew and continued to violate the statute by failing to designate a critical habitat for the Shrew for greater than five years following the publication of the listing decision. Memorandum Opinion and Order at 27, *Kern County Farm Bureau, et al. v. Anne*

*Badgley, et al.*, No. 02-5376 (E.D.C.A. 2004).  As in the present case, the FWS in *Kern County* conceded that it was in violation of 16 U.S.C. § 1533(a)(3)(A); in addition, in both *Kern County* and in the present case, the FWS stated to the court that it would not designate a critical habitat for the listed species absent a court order.  *Id.* at 29-30.  The court in *Kern County* found "it reasonable to require the Service to publish a proposed critical habitat determination ... no later than one year" from the date of the order.  *Id.* at 30.

In keeping with the holding in *Kern County*, this court holds that the appropriate remedy for the FWS's failure to comply with 16 U.S.C. § 1533(a)(3)(A) is for the court to order the FWS to publish a proposed critical habitat determination for the Alabama Sturgeon no later than six months following the issuance of the order and a final determination no later than one year following the issuance of the order.

## Conclusion

For the reasons stated, the Coalition's motion for summary judgment is **GRANTED** in part and **DENIED** in part.  The Government's motion for summary judgment is **GRANTED** in part and **DENIED** in part.  A separate order will be entered consistent with this opinion.

**DONE** this 14th day of November, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge